IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

RAYMOND A. THIELE,

                Plaintiff,

vs.

JEREMY HOUGH, *et al.*,

                Defendant.

Case No. 3:18-cv-00186-RRB

**ORDER AND OPINION
GRANTING IN PART SUMMARY
JUDGMENT AT DOCKET 39**

## I.  INTRODUCTION

Plaintiff Raymond A. Thiele, a self-represented prisoner in the custody of the Alaska Department of Corrections ("DOC"), filed this action based on claims of unlawful mail interference pursuant to 42 U.S.C. § 1983, which permits a plaintiff to seek relief for federal constitutional violations by officials acting under color of state law.  Thiele's Complaint alleges that Defendants, including unnamed John/Jane Does in the Anchorage Correctional Complex ("ACC") mailroom, allowed or participated in efforts to prevent him from sending or receiving mail in retaliation for his previously-filed grievances against the mailroom.[1]  Thiele seeks injunctive and declaratory relief, up to $243,250 in compensatory damages, and $25,000 per Defendant in punitive damages.[2]

---

[1] Docket 15 at 5–22.
[2] *Id.* at 25.

Defendants now move for summary judgment on all claims.[3] Thiele opposes the motion,[4] and Defendants replied.[5] Oral argument was not requested and was not necessary to the Court's determination of the motion. For the reasons discussed below, Defendants' motion for summary judgment will be granted in part.

## II.  BACKGROUND

Plaintiff is housed at Spring Creek Correctional Facility following his October 2018 Alaska state conviction for first-degree sexual abuse of a minor.[6] In August 2018, Plaintiff filed the present civil rights action against seven individual Defendants who work or formerly worked at ACC, where he was housed as a pre-trial detainee.[7] The operative Third Amended Complaint asserts that, from October 15, 2016, through September 10, 2018, the mailroom Defendants committed, and the supervisory Defendants allowed, the following separate adverse actions in retaliation for his April 2016 grievance[8] against the ACC mailroom as well as various grievances filed during that time period:

**No. 1:**  Plaintiff alleges that, on October 16, 2016, a mailroom clerk returned to his spouse without notice to him a letter she had sent Plaintiff.[9]

---

[3] Docket 39.

[4] Docket 42.

[5] Docket 45.

[6] *See* https://records.courts.alaska.gov/ (Case No. 3AN-13-07552).

[7] Docket 1 at 1–2.

[8] Docket 15 at 5–22; Docket 15-1 at 1; Docket 39-5 (SEALED) at 10. Thiele sought reimbursement in the April 2016 grievance after he chose the less expensive option of two quoted prices for outgoing mail but a mailroom clerk subsequently authorized, and charged Thiele for, the more expensive mail service. Docket 15-1 at 1.

[9] Docket 15 at 5.

**No. 2:** Plaintiff alleges that, on December 4, 2016, a mailroom clerk returned to his spouse without notice to him a letter she had sent Plaintiff.[10]

**No. 3:** On December 14 and 21, 2016, Plaintiff received from the ACC mailroom two notices of non-acceptable mail or parcel stating that a catalog and photos he had ordered from C.N.A. Entertainment were being withheld for "unacceptable frontal nudity."[11] In response to Plaintiff's December 20, 2016, request for interview ("RFI") arguing that the catalog did not have frontal nudity, a DOC employee signed the RFI as "granted per standards," and Plaintiff received the catalog.[12] Plaintiff also filed an RFI as to the photos, and Defendant Sergeant Helms replied, "I allowed 5 photographs until now that's all I was aware of. I asked the facility mail clerk and she said they were sent to the West Building for distribution."[13] According to Plaintiff, he received the five approved photos, but he had ordered ten photos in total.[14]

**No. 4:** On January 11, 2017, Plaintiff received a non-acceptable mail form stating that a card sent to him by his spouse was being withheld because it had "unknown substances on envelope."[15] The non-acceptable mail form states that an inmate must respond to the notice within three working days or mail will be disposed.[16] In response to Plaintiff's RFI stating that he had submitted a signed notice requesting that the withheld

---

[10] *Id.* at 6.
[11] *Id.* at 7; Docket 15-2 at 22; Docket 39-2.
[12] Docket 15-2 at 22.
[13] *Id.* at 25.
[14] Docket 15 at 7.
[15] *Id.* at 8; Docket 39-3.
[16] Docket 39-3.

card be returned to the sender, the letter was mailed back to Plaintiff's spouse February 10, 2017, nearly a month after Plaintiff received notice of it.[17]

**No. 5:**  Plaintiff alleges that, on February 10, 2017, a mailroom clerk returned to his spouse without notice to him a letter she had sent Plaintiff.[18]

**No. 6:**  Plaintiff alleges that, on March 18, 2017, a mailroom clerk returned to his spouse without notice to him a letter she had sent Plaintiff.[19]

**No. 7:**  On March 23, 2017, Plaintiff received a non-acceptable mail form stating that a letter sent to him by his spouse was being withheld because it had "unknown substances on the letter."[20]  Plaintiff filed an RFI that day requesting to speak to Sergeant Helms about "more mail/mail room issues."[21]  According to Plaintiff, a superintendent "granted" him the letter, but a mailroom clerk disposed of the letter on April 14, 2017, while Plaintiff was "going through the process" of obtaining it.[22]

**No. 8:**  Plaintiff alleges that his attorney sent him a letter on March 20, 2017, which he never received.[23]

**No. 9:**  On April 10, 2017, Plaintiff received a non-acceptable mail form stating that a letter sent to him from an inmate at Goose Creek Correctional Center was being withheld for "unknown substance on letter."[24]  Defendant Sergeant Elmore approved

---

[17]  Docket 15-1 at 12; Docket 39-3.
[18]  Docket 15 at 9.
[19]  *Id.* at 10.
[20]  *Id.* at 11; Docket 15-1 at 35.
[21]  Docket 15-1 at 7.
[22]  Docket 15 at 11; Docket 15-1 at 35.
[23]  Docket 15 at 12.
[24]  *Id.* at 13; Docket 39-4.

the letter on April 17, 2017, and the letter was given to Plaintiff.[25]  According to Plaintiff, by the time the letter was delivered to him and he responded, the sender was released from custody, and they are no longer in contact.[26]

**No. 10:**  On May 16, 2017, the ACC mailroom date-stamped an incoming letter to Plaintiff from his attorney.[27]  Plaintiff subsequently filed an RFI stating that he had received his legal mail 72 hours after it had arrived at the facility.[28]  Sergeant Elmore responded, "Noted – will look into this matter."[29]

**No. 11:**  On June 12, 2017, Plaintiff submitted an RFI asking asked the ACC property clerk to mail a book and necklace to his wife.[30]  Defendant Rachel Fike responded "fill out on OTA form" later that day.[31]  According to Plaintiff, Fike's statement that he had to "fill out unneeded paperwork" hindered his ability to send the items, which his wife did not receive until about three weeks after his initial request for mailing.[32]

**No. 12:**  On June 6, 2017, Plaintiff submitted an RFI stating that his legal mail had been opened outside of his presence that day.[33]

**No. 13:** On September 14, 2017, Plaintiff submitted an RFI transmitting two religious books, including a Bible, that he had inscribed with a note to his wife to be

---

[25] *Id.*
[26] Docket 15 at 13.
[27] *Id.* at 12.
[28] Docket 15-1 at 17.
[29] *Id.*
[30] Docket 15 at 15; Docket 15-1 at 36.
[31] Docket 15-1 at 36.
[32] Docket 15 at 15.
[33] Docket 15 at 16; Docket 15-1 at 18.

weighed for a postage quote to his wife's address.[34]  Fike erroneously stated in response,

"Those are not your books.  You cannot mail or give away books that you did not purchase.

When books are purchased, the mailroom stamps your OB # on them.  Those two books

do not have your OB stamp from the mailroom."[35]  Fike marked out the inscription in black

permanent marker and placed them for the general population's use.[36]   In response to

Plaintiff's RFI, Sergeant Elmore wrote, "Attach a commissary request for postage due to

mail out your books and I will get it to property [for mailing]."[37]

      **No. 14:**  On February 16, 2018, Plaintiff received a non-acceptable mail form

stating that a birthday card received from his parents was being withheld because "[t]ri-

fold cards are not allowed."[38]  In response to Plaintiff's RFI, Sergeant Elmore responded

that "[i]t's a security issue because it can be used to conceal contraband."[39]

      **No. 15:**  On February 18, 2018, Plaintiff submitted an RFI requesting a

postage quote to send two books to his mother.[40]  In response to Plaintiff's RFI, Fike stated,

"You need to ask the mailroom not property.  When you are ready for them to be mailed

out fill out an OTA form and send it to property.  Until then, these books will be in your

property box."[41]  According to Plaintiff, Fike sent him "outrageous quotes," and it took

"several weeks" for a different employee to mail the books.[42]

---

[34] Docket 15 at 17; Docket 15-1 at 37.
[35] Docket 15-1 at 37.
[36] Docket 15 at 17.
[37] Docket 15-1 at 38.
[38] Docket 15 at 18; Docket 15-2 at 20.
[39] Docket 39-6.
[40] Docket 15 at 19; Docket 15-2 at 13.
[41] Docket 15-2 at 13.
[42] Docket 15 at 19.

**No. 16:** On March 12, 2018, Plaintiff received a book he had ordered, which had a torn cover.[43] In response to Plaintiff's RFI, Sergeant Elmore stated that the book arrived that way in the mail.[44] Plaintiff went through the grievance process and was awarded $30.00 for the damage to his book.[45]

**No. 17:** On August 8, 2018, Plaintiff received a non-acceptable mail form stating that a card with photos from his wife was being withheld due to an "unknown substance on photos."[46] Plaintiff filed a formal grievance, and the Superintendent found that "those items were screened and denied for valid reasons."[47] Plaintiff avers that he requested that the letters and pictures be returned to his wife, but they were disposed of on August 30, 2018.[48]

**No. 18:** Plaintiff alleges that, on September 10, 2018, a mailroom clerk returned to his niece without notice to him a letter she had sent Plaintiff.

## III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of proof for showing that no fact is in dispute.[49] If the moving party meets that burden, the non-moving party must present specific factual evidence demonstrating the

---

[43] *Id.* at 20.
[44] Docket 15-2 at 11.
[45] *Id.* at 10.
[46] Docket 15 at 21; Docket 39-7.
[47] Docket 15-2 at 8.
[48] Docket 15 at 21; Docket 39-7.
[49] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

existence of a genuine issue of fact for trial.[50]  The non-moving party may not rely on mere allegations or denials.[51]  He must demonstrate that enough evidence supports the alleged factual dispute to require a finder of fact to make a determination at trial between the parties' differing versions of the truth.[52]

When considering a motion for summary judgment, a court must accept as true all evidence presented by the non-moving party, and draw "all justifiable inferences" in the non-moving party's favor.[53]  To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[54] The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[55]  If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[56]

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by:

> (A)  citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B)  showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[57]

---

[50]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).
[51]  *Id.*
[52]  *Id.* (citing *First National Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)).
[53]  *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).
[54]  *Id.* at 248.
[55]  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).
[56]  *Anderson*, 477 U.S. at 249.
[57]  Fed. R. Civ. P. 56(c)(1).

# IV. DISCUSSION

Each of Plaintiff's claims are primarily raised under the overarching theory of First Amendment retaliation. Under the First Amendment, prison officials may not retaliate against prisoners for initiating or filing administrative grievances.[58] Within the prison context, a viable claim of First Amendment retaliation requires five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.[59]

An inmate must submit evidence, either direct or circumstantial, to establish a nexus between the exercise of constitutional rights and the alleged retaliatory action; in other words, "a plaintiff must show that his protected conduct was the 'substantial' or 'motivating' factor behind the defendant's conduct."[60] He also must show that he suffered more than minimal harm.[61] The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains.[62] "Case law dictates that [retaliation] claims must be examined with skepticism and particular care" as "[r]etaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike."[63]

---

[58] *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005).

[59] *Id.* at 567–68.

[60] *Broheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citation and quotation marks omitted).

[61] *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

[62] *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).

[63] *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1154 (E.D. Wash. 2014); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

Reading the Third Amended Complaint liberally,[64] Plaintiff's allegations also raise related claims of First Amendment interference with both incoming and outgoing mail, property damage, and due process violation of his right to the prison grievance system. The Court addresses these claims below.

## A. Incoming Mail Censorship Claims (Adverse Actions 1–10, 12, 14, 17, 18)

Prisoners enjoy a First Amendment right to send and receive mail.[65] A prison, however, may adopt regulations or practices that impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests."[66] The *Turner* standard applies to regulations and practices concerning all correspondence between prisoners and to regulations concerning incoming mail received by prisoners from non-prisoners.[67] Courts should "afford appropriate deference" to prison officials in evaluating "proffered legitimate penological reasons."[68]

### (1) Letters from family members (Adverse Actions 1, 2, 4–7, 14, 17, 18)

Plaintiff first avers that various mailroom defendants improperly restricted numerous letters and cards sent by his wife, mother, and niece. With respect to Adverse Actions 1, 2, 5, 6, and 18, Plaintiff claims that the various mailroom defendants returned to sender numerous letters, without affording him notice of the rejection, in violation of

---

[64] *See Hebbe v. Pliler*, 627 F.3d 338, 341 (9th Cir. 2010) (noting courts' obligation to liberally construe *pro se* civil rights actions and afford *pro se* prisoners "the benefit of any doubt").

[65] *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)).

[66] *See Turner v. Safley*, 482 U.S. 78, 89 (1987).

[67] *See Thornburgh*, 490 U.S. at 413.

[68] *Pratt*, 65 F.3d at 807.

internal DOC policy.[69]  But, even if the officials did not follow prison policy, that alone does not amount to a constitutional violation.[70]  Moreover, even if Plaintiff could establish that defendants erred in determining that the challenged mail was prohibited on its face, he fails to show that the errors are anything more than mere negligence, which defeats any First Amendment claim.[71]  Nor does he produce any direct evidence other than mere temporal proximity that would suggest a causal link between the rejection of the letters and his protected activity, which is necessary to support a retaliation claim.[72]

As to Adverse Actions 4, 7, and 17, Plaintiff received non-acceptable mail form notices informing him that the incoming mail was rejected due to the presence of "unknown substances."[73]  Although Plaintiff concedes that the denial of mail for unknown substances serves a valid penological interest, he nonetheless argues that the proffered reason was mere pretext for improper motive, and he often was granted the withheld mail when he challenged the unknown substance designation.[74]

In Adverse Action 14, Plaintiff similarly challenges Defendants' withholding of a tri-fold birthday card sent by his mother, which he was informed was "a security issue

---

[69] Docket 15 at 5, 6, 9, 10.

[70] *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir 2009) (noting that failure to adhere to "state departmental regulations do not establish a federal *constitutional* violation").

[71] *See Daniels v. Williams*, 474 U.S. 327, 330 (1986) (determining negligent actions of a government employee are insufficient for a finding of section 1983 liability).

[72] *Nelson v. Pima Community College*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) (a plaintiff's mere speculation that there is a causal connection is not enough to raise a genuine issue of material fact); *see also Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (affirming summary judgment where there was no evidence that defendants knew about plaintiff's prior lawsuit or that defendants' disparaging remarks were made in reference to the prior lawsuit).

[73] Docket 15-1 at 10, 35; *see Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) ("[W]e may consider facts contained in documents attached to the complaint.").

[74] Docket 42 at 11.

because it can be used to conceal contraband."[75]  Plaintiff generally avers that, "[a]t the time several people had been receiving them and no one had an issue."[76]  But, again, courts "necessarily confer a certain degree of discretion" on prison authorities to determine what constitutes prohibited material.[77]  Likewise, Plaintiff again sets forth no direct evidence that would override the deference the Court must afford Defendants' determinations as to these challenged actions, or would establish that any errors in their determinations were of constitutional magnitude.  Accordingly, summary judgment is proper as to Adverse Actions 1, 2, 4–7, 14, 17, and 18.

### (2)    Nudity restrictions (Adverse Action 3)

Plaintiff next challenges Defendants' handling of a catalog and photos he ordered from C.N.A. Entertainment that were withheld for "unacceptable frontal nudity."[78]  After he initiated the grievance process as to those items, he eventually received the catalog and five photographs.[79]  Although allegations that mail delivery was delayed for an inordinate amount of time may be sufficient to state a claim for a violation of the First Amendment,[80] a temporary delay or isolated incident of delay or other mail interference without evidence of improper motive, as the record supports occurred here, does not violate

---

[75]  Docket 15 at 18; Docket 15-2 at 20; Docket 39-6.
[76]  Docket 42 at 10.
[77]  *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (courts must accord prison administrators wide-ranging deference in the adoption and execution of policies and practice that, in their judgment, are necessary to preserve institutional order, discipline, and security).
[78]  Docket 42 at 7; Docket 15-2 at 22; Docket 39-2.
[79]  Docket 15-2 at 22, 25.
[80]  *See Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996).

a prisoner's First Amendment rights.[81]  Summary judgment therefore also is proper as to Adverse Action 3.[82]

### (3)    Letter from fellow inmate (Adverse Action 9)

Plaintiff additionally refers to a letter sent to him from an inmate at Goose Creek Correctional Center that initially was withheld for "unknown substance on letter," but subsequently was approved for distribution a week after its arrival.[83]  Although it may be unfortunate that Plaintiff fell out of contact with the sender as a result of the delay, Plaintiff again fails to show that the delay was improperly motivated, or that it constituted a violation of his First Amendment rights, and summary judgment is proper on Adverse Action 9.

### (4)    Legal mail (Adverse Actions 8, 10, 12)

Plaintiff further contends that Defendants withheld a letter from his attorney (Adverse Action 8), delayed delivery of a letter from his attorney (Adverse Action 10), and opened outside his presence legal mail from his attorney (Adverse Action 12).  Legal mail is subject to heightened First Amendment protections.[84]  In particular, legal mail to and from a pretrial detainee's attorney carries special protections under the First and Sixth Amendments, requiring that a detainee be present when legal mail is inspected.[85]  With

---

[81]  *See Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999).

[82]  To the extent Plaintiff may be raising with respect to Adverse Action 3—as well as Adverse Actions 7 and 17—property damage claims as to letters and photos he contends were wrongfully destroyed, as discussed in Section IV.C., *infra*, the availability of relief through a state common-law tort suit precludes a § 1983 claim as to any property damage resulting from those Adverse Actions.

[83]  Docket 15 at 13; Docket 39-4.

[84]  *See O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir. 1996).

[85]  See *Mangiaracina v. Penzone*, 849 F.3d 1191, 1196–97 (9th Cir. 2017) (Sixth Amendment requires a pretrial detainee be present when legal mail related to a criminal matter is inspected); *Hayes v.*

respect to a legal mail claim, a plaintiff is not required to "show any actual injury beyond the free speech violation itself to state a constitutional claim" under the First Amendment.[86]

Defendants argue that they are entitled to summary judgment on Plaintiff's legal mail claims because he failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA").[87] "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[88] The PLRA requires proper exhaustion, which "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."[89]

The burden is upon the defendant to prove that there was an available administrative remedy and that the prisoner did not exhaust that available administrative remedy.[90] Once the defendant has carried that burden, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.[91] The ultimate burden of proof remains with the defendant.[92] If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a

---

*Idaho Corr. Ctr.*, 849 F.3d 1204, 1210 (9th Cir. 2017) (prisoners have a First Amendment right to have their properly marked legal mail, including civil mail, opened in their presence).

[86] *Hayes*, 849 F.3d at 1212.
[87] Docket 39 at 17–19.
[88] *Porter v. Nussle*, 534 U.S. 516, 532 (2002).
[89] *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).
[90] *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).
[91] *Id.*
[92] *Id.*

defendant is entitled to summary judgment.[93]  But, if material facts are disputed, summary judgment should be denied and the district judge, rather than a jury, should determine the facts in a "preliminary proceeding."[94]

Defendants have shown that there was available to Plaintiff an internal grievance and appeal system for inmates that requires:  (1) an attempt for informal resolution through verbal communication or an RFI; (2) a formal grievance utilizing Form 808.03B that must be filed "[w]ithin 30 calendar days from the date the incident occurred or from when the prisoner has knowledge of the incident;" (3) a grievance appeal also using Form 808.03B; and (4) a letter to the Standards Administrator for "final administrative" review.[95]  The Court concludes, however, that there exists issues of material fact as to whether Plaintiff exhausted his remedies as to Adverse Actions 8, 10, and 12, and, if not, whether the administrative remedies were effectively unavailable to him.

Defendants aver that "there are no Request for Interviews or Grievances for incidents that [Plaintiff] alleges occurred on" March 20, May 16, and June 6, 2017, dates which correspond to Adverse Actions 8, 10, and 12.[96]  Yet in the same paragraph, Defendants state that "May 1, 2017 was the first formal grievance Mr. Thiele submitted regarding [the mail] issue."[97]

---

[93] *Id.*
[94] *Id.*
[95] Docket 15-2 at 30–32.
[96] Docket 39 at 17.
[97] *Id.*

Moreover, Plaintiff attaches to the Third Amended Complaint a June 6, 2017, RFI to Defendant Moore that states, "I just want to put it in black and white that I received legal mail today and it was opened prior to mail being delivered."[98]  In that RFI, Plaintiff also refers to "legal mail not mak[ing] it to [him], legal mail opened, or delivered (3) days after received."[99]  A review of Defendants' own exhibit in support of their motion for summary judgment shows that Plaintiff filed a formal grievance with respect to "mailroom misconduct" at least as far back as December 11, 2016, well before the Adverse Actions regarding legal mail occurred.[100]  Likewise, in the May 1, 2017, grievance, Plaintiff stated that he was "unable to file a grievance" regarding recent mailroom issues due to supervisory Defendants' "lack of dilligence [sic] in responding to [his] RFI's and returning the paperwork."[101]

Reviewing the proffered evidence in the light most favorable to Plaintiff, genuine issues of material fact exist as to whether Plaintiff exhausted his administrative remedies or whether those remedies were available to him, thus precluding summary judgment on Adverse Actions 8, 10, and 12.[102]  As noted above, where, as here, there are

---

[98]  Docket 15-1 at 18.
[99]  *Id.*
[100]  Docket 39-5 (SEALED) at 7.
[101]  *Id.* at 6.
[102]  Notably, Defendants do not address the substance of Adverse Actions 10 (the delayed legal mail claim) or 12 (the opened legal mail claim) in their motion for summary judgment.  Defendants dispute that legal mail was received for Plaintiff on March 20, 2017 (Adverse Action 8), Docket 39 at 23, but provide in support only an unverified and heavily-redacted mail log book from November 8, 2016, and March 21, 2017, Docket No. 39-9.  Because Plaintiff attaches to the Third Amended Complaint a transmittal memo from his attorney dated March 20, 2017, Docket No. 15-1 at 19–20, whether the correspondence referenced in Adverse Action 8 was received by the ACC mailroom presents a genuine issue of material fact.  Accordingly, the Court does not address whether summary judgment is appropriate on the substance of the claims alleged in Adverse Actions 8, 10, and 12.

disputed material facts and summary judgment is denied, the district judge should determine the facts in a "preliminary proceeding."[103]  The Court will therefore allow the parties until **July 26, 2021**, to file supplemental briefs solely addressing whether Plaintiff exhausted his administrative remedies as to Adverse Actions 8, 10, and 12.  If Defendants concede that Plaintiff has exhausted his administrative remedies or that total exhaustion should be excused, Defendants shall provide notice to the Court by **July 26, 2021**.  If Defendants maintain that Plaintiff has failed to exhaust his administrative remedies as to these Adverse Actions and should not be excused from doing so, Defendants shall provide competent and admissible evidence in support.

## B.       Transmission of Outgoing Mail (Adverse Actions 11, 15)

The First Amendment's guarantee of freedom of speech also provides protection from censorship of a prisoner's outgoing mail.[104]  Because outgoing correspondence from prisoners does not, by its very nature, pose a serious threat to internal prison order and security, "[w]hen a prison regulation affects outgoing mail as opposed to incoming mail, there must be a closer fit between the regulation and the purpose it serves."[105]

Here, however, Plaintiff does not allege that he was prohibited from mailing the books or necklace at issue.  Rather, he alleges as to Adverse Actions 11 and 15 that he sent items to the mailroom to be weighed for a postage quote, and was either quoted rates

---

[103]  *Albino*, 747 F.3d at 1166.
[104]  *See Procunier v. Martinez*, 416 U.S. 396, 405–06 (1974), *overruled on other grounds*, *Thornburgh v. Abbott*, 490 U.S. 401, 413–14 (1989).
[105]  *Nordstrom v. Ryan*, 856 F.3d 1265, 1272 (9th Cir. 2017).

that were too high, or told to fill out "unnecessary" forms, both of which delayed the mailing process.[106] While the delays Plaintiff experienced may have been frustrating, he again fails to prove that they were the result of improper motive or were of constitutional dimension, and summary judgment must be granted on Adverse Actions 11 and 15.

## C. Property Damage Claims (Adverse Actions 13, 16)

Plaintiff further contends that ACC staff ripped the cover of a book he ordered and used permanent marker to deface a Bible he submitted to the mailroom to be mailed to his wife.[107] The Supreme Court has held that due process is not violated when a state employee negligently deprives an individual of property, as long as the state makes available a meaningful post-deprivation remedy.[108] The rationale underlying *Parratt* is that pre-deprivation procedures are impractical when the deprivation of property occurs through negligent conduct of a state employee because a state cannot know when such deprivations will occur.[109] Moreover, "[w]here a government official's act causing injury to life, liberty, or property is merely negligent, 'no procedure for compensation is constitutionally required.'"[110]

Although Plaintiff challenges Defendants' assertions that the ordered book was received damaged and that Defendant Fike acted without malice when she mistakenly marked up Plaintiff's Bible, the logic of *Parratt* has been extended to intentional

---

[106] Docket 15 at 15, 19.
[107] *Id.* at 17, 20.
[108] *See Parratt v. Taylor*, 451 U.S. 527, 541 (1981), *overruled on other grounds in Daniels v. Williams*, 474 U.S. 327 (1986).
[109] *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984).
[110] *Daniels*, 474 U.S. at 333 (quoting *Parratt*, 451 U.S. at 548).

unauthorized deprivations of property by state actors because a state also cannot know when such deprivations will occur.[111] As with negligent deprivations, where a state makes available a meaningful post-deprivation remedy, such as a common-law tort suit against a prison employee for intentional unauthorized deprivations, a federal due process claim is precluded.[112]

Plaintiff disputes Defendants' claim that DOC compensated him for his loss of property.[113] But, he does not make any argument as to why state court post-deprivation procedures in the form of a common-law tort suit[114] are defective or ineffective to remedy the loss. Accordingly, Plaintiff fails to state a viable section 1983 claim based on the property damage, and summary judgment is proper on Adverse Actions 13 and 16.

## D. Access to the Prison Grievance System

Finally, Plaintiff appears to raise a claim that he was deprived of grievance procedures that complied with DOC regulations.[115] For example, Plaintiff complains that it would take up to nine months for supervisory Defendants to reply to a level one grievance, although the DOC policy required a response within fifteen days.[116]

There is no federal constitutional right, however, to a prison administrative appeal or grievance system for state inmates.[117] Alaska's regulations grant prisoners a

---

[111] *See Hudson*, 468 U.S. at 533.
[112] *Id.* at 534–35; *King v. Massarweh*, 782 F.2d 825, 826 (9th Cir. 1986).
[113] *See* Docket 39 at 10; Docket 42 at 11.
[114] *See* Alaska Stat. § 09.10.070.
[115] Docket 42 at 1.
[116] *Id.*
[117] *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).

purely procedural right: the right to file a prison grievance or appeal.[118] A provision that merely provides procedural requirements, even if mandatory, cannot form the basis of a cognizable liberty interest protected by the Due Process Clause.[119] Plaintiff had no federal constitutional right to a properly functioning state prison appeal system; an untimely or incorrect decision on a grievance or administrative appeal therefore does not amount to a violation of Plaintiff's right to due process. Accordingly, although Plaintiff's claims regarding the prison grievance system are relevant to the issue of whether he exhausted his administrative remedies, as discussed *supra*, they do not give rise to an independent due process claim.

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment at Docket 39 is **GRANTED in part**. The non-legal incoming and outgoing mail claims (Adverse Actions 1–7, 9, 11, 13–15, 17, 18), the property damage claims (Adverse Actions 13, 16), and the access to the prison grievance system claim are **DISMISSED WITH PREJUDICE**.

The Court reserves ruling on Defendants' Motion for Summary Judgment with respect to the legal mail claims (Adverse Actions 8, 10, 12). On or before **July 26, 2021**, the parties are directed to submit supplemental briefing solely on the issue of whether Plaintiff exhausted his administrative remedies as to Adverse Actions 8, 10, and 12, or

---

[118] *See* 22 Alaska Admin. Code § 05.155(b); DOC Policies and Procedures 808.03.
[119] *See Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993); *see also Antonelli*, 81 F.3d at 1430 (prison grievance procedure is procedural right that does not give rise to protected liberty interest requiring procedural protections of Due Process Clause).

whether exhaustion should be excused. Defendants are reminded to submit competent and admissible evidence in support of any supplemental brief, including declarations attesting to the accuracy and reliability of exhibits. The Court likewise reserves ruling on Defendants' Motion for Summary Judgment as to Defendants Zane Nighswonger, Lt. Jason Hamilton, Lt. Harry Moore, Security Sgt. Tom Elmore, Sgt. Gwen Helms, Sgt. Kevin Kelly, and John/Jane Does 8, 10, and 11. The Court will address whether these Defendants should remain in this case after it determines whether the claims raised in Adverse Actions 8, 10, and 12 may proceed.

IT IS SO ORDERED this 24th day of June, 2021, at Anchorage, Alaska.


_____ */s/ Ralph R. Beistline* _____
RALPH R. BEISTLINE
Senior United States District Judge